FILED

8/26/19 1:39

CHERYL COCHRAN-WILSON, CLERK

BY _____ D.C.

# IN THE CIRCUIT COURT OF UNION COUNTY, ARKANSAS

LUIS LOPEZ                                                   PLAINTIFF

v.                    CASE NO. 70CV-19-293-4

TREXIS INSURANCE CORPORATION                                DEFENDANT

## CLASS ACTION COMPLAINT

### I. INTRODUCTION

1.     Luis Lopez insured his 2009 Nissan Versa with Trexis Insurance Corporation ("Trexis"). Lopez was involved in an accident, and Trexis declared his vehicle a total loss. As it does with all its total loss claims, Trexis used a Mitchell Valuation Report ("Mitchell Report") to determine what it would pay on Lopez's claim. Based on the report, Trexis placed the actual cash value or replacement cost of Lopez's vehicle at approximately $4,622.00. This is less than the actual cash value of the vehicle and less than what was required to replace his vehicle with another of like kind and quality.

2.     Trexis's use of the Mitchell Report to value total loss claims violates its contracts with its insureds and Arkansas law. Trexis is required

Page **1** of **20**



EXHIBIT

A

to calculate actual cash value through either: (a) the cost of a specific, comparable replacement automobile, or (b) using one of two or more quotations obtained from two or more qualified dealers or appraisal services located within the local market area. Instead of following Arkansas law, Trexis uses the Mitchell Report to mislead and cheat its policyholders and increase its profits. The Mitchell Report systematically undervalues the insured's vehicles, resulting in a payment of less than the actual cash value for all total loss claims, saving Trexis millions of dollars each year at the expense of its insureds.

3.    Lopez brings this suit on behalf of himself and others similarly situated to recover the difference between the actual cash value of his vehicle and what he was paid, punitive damages, costs, and attorneys' fees. Lopez also asks the Court to declare that the use of the Mitchell Report to adjust first-party insurance claims violates Arkansas law and to permanently enjoin its use.

## II. Parties, Jurisdiction, and Venue

4.    Plaintiff Luis Lopez is a resident and citizen of El Dorado, Union County, Arkansas. At all times relevant to this Complaint, he had a motor vehicle insurance policy with Trexis Insurance Corporation.

Page **2** of **20**

5.     Defendant Trexis Insurance Corporation is incorporated in Virginia and has its principal place of business in Franklin, Tennessee. It is licensed to do business in Arkansas, and its registered agent for service is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

6.     This Court has subject matter jurisdiction pursuant to Ark. Const. amend. 80, § 6 and Ark. Code Ann. § 16-13-201.

7.     Venue is proper in this Court because Lopez resided in Union County at the time of the events which gave rise to this cause of action, and his accident occurred in Union County. Ark. Code Ann. § 16-60-101.

### III. FACTUAL ALLEGATIONS

8.     Lopez was involved in a motor vehicle accident in April 2018, which resulted in substantial damage to his 2006 Nissan Versa. Lopez insured his vehicle with Defendant Trexis Insurance Corporation, and he filed a claim regarding his property damage. Trexis determined that the vehicle was a total loss.

9.     Upon information and belief, Lopez's insurance policy with Trexis contained a clause providing for the adjustment and settlement of total loss claims based on actual cash value. Upon information and belief,

this is Trexis' standard automobile insurance policy issued to insureds in the state of Arkansas.

10.    Lopez has been unable to locate a copy of his policy to attach to this Complaint, and Trexis did not respond to his requests for a copy of his policy. Good cause exists for Lopez not to attach a copy of his policy to this Complaint because Trexis has a copy of the policy, and Lopez can obtain a copy in discovery.

11.    To adjust Lopez's claim, Trexis used a report from a third-party corporation, Mitchell International, Inc. ("Mitchell"). Mitchell provides services to the collision and insurance claims industry, including the Mitchell Report. The Mitchell Report is sold almost exclusively to insurance companies, and it is marketed as reducing the cost of total value settlements. Upon information and belief, Trexis uses the Mitchell Report to calculate its offers of all total loss claims.

12.    Trexis presented the Mitchell Report to Lopez as representing the actual cash value of the vehicle, and, based on the Mitchell Report, Trexis paid approximately $4,622.00 in actual cash value to adjust Lopez's claim. *See* Mitchell Report, attached as Exhibit "A." The actual cash value – and the cost to replace the vehicle with one of like kind and quality – was higher.

Page **4** of **20**

13.    The Mitchell Report systematically undervalues vehicles by making a series of arbitrary and unexplained adjustments to the vehicles contained in the report.

14.    For instance, the Mitchell Report made a "title history adjustment" of $1,476.39. According to the Mitchell Report, the "title history adjustment" is "an average deduction that represents a variety of title history types such as flood, hail, collision, etc. and is not specific to a particular title type. In addition, the degree of the damage that resulted in a title history is assumed to be typical." *See* Mitchell Report, attached as Exhibit "A." On the same page, however, the Mitchell Report states that there is "no obvious damage" to the vehicle. *Id.*

15.    Similarly, the listed price of each "comparable" vehicle in the report was automatically reduced by around 10% for a "projected sold adjustment." The Mitchell Report claims that this is "an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." The report does not explain the basis for this reduction, and it is not grounded in reality. But the result of this reduction is to automatically reduce the amount paid on Lopez's claim, and every other person whose total loss claim was valued using the Mitchell Report

Page **5** of **20**

16.    The Mitchell Report also makes other adjustments for mileage, equipment, and condition, but the report does not explain how or why those adjustments are made.

17.    The effect of these adjustments is to reduce payment on the claim to an amount less than the actual cash value and far less than is required to purchase a replacement vehicle of like kind and quality.

18.    Trexis knows that the Mitchell Report undervalues vehicles. Despite knowing that the Mitchell Report undervalues vehicles, Trexis continues to use it to determine the amount to pay claimants.

19.    Trexis presented the Mitchell Report to Lopez as representing the actual cash value of his vehicle and Lopez relied on Trexis' representation when adjusting their claims. Trexis misled Lopez when it presented the Mitchell Report as representing the actual cash value of his vehicle.

20.    Arkansas law requires that Trexis, when adjusting or settling first party automobile total losses, either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or

Page **6** of **20**

appraisal services located within the local market area when a comparable automobile is not located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2). If the insurer deviates from one of those methods, the deviation must be supported by documentation giving particulars of the automobiles condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3).

21. Mitchell International, Inc. is not a qualified dealer or appraisal service located in Union County, Arkansas. Mitchell International, Inc. does not maintain any offices in the state of Arkansas.

22. Trexis did not provide documentation about why it needed to deviate from one of the two approved methods to adjust Lopez's claim, and there was nothing unique about Lopez's vehicle that would justify deviating from the methods approved under Arkansas law.

23. Trexis knows or should know that using the Mitchell Report to determine actual cash value violates Arkansas law. Despite knowing that the practice is unlawful, Trexis uses the practices because it saves millions of

dollars. Trexis can achieve this savings because the cost of obtaining an appraisal and litigating the value of a property damage claim exceeds the difference in value between the Mitchell Report and the actual cash value of the vehicle.

## IV. CLASS ACTION ALLEGATIONS

24.     Lopez incorporates by reference the preceding paragraphs as if they were fully set forth herein.

25.     Lopez brings this as a class action under Rule 23 of the *Arkansas Rules of Civil Procedure*.

26.     Members of the putative class are so numerous that joinder of all such members is impracticable. The exact size of the putative class is unknown but may be easily determined from records maintained by Trexis.

27.     There are common questions of law and fact applicable to the putative class with respect to liability, relief, and anticipated affirmative defenses. Common questions of law and fact include:

a.     Whether Trexis has a practice of using the Mitchell Report to determine actual cash value;

b.     Whether Regulation § 43, § 10 is incorporated into the terms of Trexis' automobile insurance policies;

Page **8** of **20**

c.     Whether Trexis' practices violated Regulation 43, § 10;

d.     Whether Mitchell International, Inc. is a qualified dealer or appraiser in the local market area; and

e.     By what percentage does the Mitchell Report systematically undervalue cars vis a vis their actual cash value.

28.     Lopez's claims are typical of the putative class. Like all other putative class members, Lopez had a total loss automobile claim that was settled and adjusted using the Mitchell Report.

29.     Lopez will fairly and adequately protect the interest of the putative class. He has no conflicts with putative class members and has suffered the same injury as members of the putative class.

30.     Lopez's counsel possesses the requisite resources and experience in class action litigation to adequately represent Lopez and the putative class members in prosecuting the claims here.

31.     The questions of law and fact common to Lopez and members of the putative class predominate over any question affecting only individual class members. These common questions concerning Trexis' wrongdoing must be resolved for all class members.

Page **9** of **20**

32.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Trexis engages in a common business practice of using the Mitchell Report to adjust total loss claims, which is alleged to violate Arkansas law, and it is not unfair to require Trexis to litigate its business practice on a class-wide basis. Moreover, class members' individual damage claims are too small to make individual litigation an economically viable alternative. But despite the small size of any one individual's claim standing alone, the aggregate value of the practice is substantial.

33.     Lopez's class claims are appropriate to proceed under the Arkansas Deceptive Trade Practices Act. Act 986 of 2017 – which purports to prohibit most private class actions under the ADTPA – is an unconstitutional intrusion into the Arkansas Supreme Court's exclusive authority to "prescribe the rules of pleading, practice and procedure for all courts." Ark. Const. Amend. 80, § 3; *see also Johnson v. Rockwell Automation*, 2009 Ark. 241, 308 S.W.3d 135 (holding two provisions of Arkansas Civil Justice Reform Act were unconstitutional); *Summerville v. Thrower*, 369 Ark. 231, 253 S.W.3d 415 (2007) (holding statute requiring reasonable cause affidavit was unconstitutional); *Weidrick v. Arnold*, 310 Ark. 138, 835 S.W.2d 843 (1992)

Page **10** of 20

(holding statute requiring 60-day notice before filing medical malpractice claim was unconstitutional).

## V. CAUSES OF ACTION
### COUNT I: ARKANSAS DECEPTIVE TRADE PRACTICES ACT

34.   Lopez incorporates by reference the preceding paragraphs as if they were fully set forth herein.

35.   Arkansas law requires that an insurer adjust total loss automobile claims by providing the insured with enough money to purchase a specific comparable replacement vehicle in the local market area, or, if no comparable vehicle is available, using one of two or more quotations from a local dealer or appraiser. Ark. Ins. R. 43, § 10.

36.   Trexis adjusts total loss automobile claims by relying on the Mitchell Report, even though Mitchell International, Inc. is not a local dealer or appraiser and even though the report does not provide the insured with sufficient funds to purchase a comparable replacement automobile.

37.   Trexis engaged in an unconscionable, false, or deceptive act or practice in business, commerce, or trade when it used the Mitchell Report to adjust Lopez's total loss claim. Trexis also used the same unconscionable, false, or deceptive act or practice in using the Mitchell Report to adjust all its

total loss claims in Arkansas. *See* Ark. Code Ann. § 4-88-107(a)(10). *See also* Ark. Ins. R. 43, § 1 (expressly providing that violations of the Insurance Department's regulations regarding unfair claims settlement practices "constitute an unfair or deceptive act or practice in the business of insurance.").

38.    Trexis presented the Mitchell Report as representing the actual cash value of its insureds' vehicles and Lopez and putative class members justifiably relied on Trexis' representation about the actual cash value of the vehicle. Trexis misled Lopez and the putative class members by using the Mitchell Report.

39.    Trexis' conduct proximately caused damage to Lopez and putative class members because they received less for their total loss claims than they should have. Lopez and putative class members seek compensatory damages in an amount equal to the difference between the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

40.    Trexis knew or ought to have known that its conduct would result in injury to Lopez and putative class members and it continued in such conduct in reckless disregard of the consequences. Specifically, Trexis knew

Page **12** of **20**

that its use of the Mitchell Report undervalued its insureds' vehicles, yet it continued to use the Mitchell Report and mislead its insureds because it saved Trexis millions of dollars each year. As a result, Lopez and putative class members are entitled to punitive damages.

41.     Plaintiff and the putative class members are entitled to an award of attorneys' fees, costs, and expenses in bringing their Deceptive Trade Practices Act claim.

### COUNT II: FRAUD IN THE INDUCEMENT

42.     Lopez incorporates by reference the preceding paragraphs as if they were fully set forth herein.

43.     Trexis falsely represented that the amount in the Mitchell Report represented the actual cash value of Lopez's automobiles. Trexis made the same false representation to every other putative class member and misled each putative class member.

44.     Trexis knew that its representation was false. First, Trexis knew that Arkansas law requires that an insurer use one of the methods identified in Regulation 43 to determine actual cash value and that the Mitchell Report was not a permissible method. Further, Trexis knew that the Mitchell Report systematically generated valuations that were lower than the actual cash

Page **13** of **20**

value that would have resulted had it obtained a valuation from a qualified local dealer or appraiser as required by Arkansas law.

45.     Trexis intended to induce and coerce Lopez and putative class members into settling their total loss claims for less than they would have if Trexis had complied with Arkansas law and obtained a quotation from a qualified dealer or appraiser located in the local market area.

46.     Lopez and putative class members justifiably relied on Trexis' representation about the actual cash value. Indeed, because the misrepresentation goes to a material matter, reliance is presumed. *Manhattan Credit Co. v. Burns*, 230 Ark. 418, 323 S.W.2d 206 (1959) ("[R]eliance is to be presumed when, as here, the misrepresentation goes to a material matter."); *Pickering v. Garrison*, 2009 Ark. App. 107, at *13 ("Reliance is presumed when the misrepresentation goes to a material matter.").

47.     Trexis' conduct proximately caused damages. Lopez and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust their total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

48.     Trexis knew or ought to have known that its conduct would result in injury to Lopez and putative class members and it continued in such conduct in reckless disregard of the consequences. Specifically, Trexis knew that its use of the Mitchell Report undervalued its insureds' vehicles, yet it continued to use the Mitchell Report because it saved Trexis millions of dollars each year. As a result, Lopez and putative class members are entitled to punitive damages.

## COUNT III: BAD FAITH

49.     Lopez incorporates by reference the preceding paragraphs as if they were fully set forth herein.

50.     Trexis acted in bad faith to avoid liability under its policy issued to Lopez. Trexis knew that its method of settling total loss claims violated Arkansas law and would result in a lower payment to Lopez than if Trexis would have obtained a quotation from a qualified local dealer or appraiser. Despite this knowledge, Trexis fraudulently presented the Mitchell Report to Lopez as representing the actual cash value of his vehicle.

51.     Trexis did more than merely refuse to pay a claim. Trexis intentionally violated Arkansas law to save itself money at the expense of its

UNION COUNTY CIRCUIT CLERK  DOCUMENT# CTX-000000145812  PAGE 15 OF 26

insured. Trexis' conduct was dishonest and oppressive and was carried out with a state of mind characterized by contempt for its insureds.

52.    Trexis' conduct proximately caused damages. Lopez and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

53.    Trexis knew or ought to have known that its conduct would result in injury to Lopez and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Lopez and putative class members are entitled to punitive damages.

## COUNT IV: BREACH OF CONTRACT

54.    Lopez incorporates by reference the preceding paragraphs as if they were fully set forth herein.

55.    Lopez and Trexis entered into a contract. Among other things, upon information and belief, the policy provides for the adjustment and settlement of total losses based on actual cash value of the vehicle.

56.    Arkansas law requires that Trexis either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more

Page **16** of **20**

quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is not located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2)(A). If the insurer deviates from this method, it must provide documentation for the deviation, including giving particulars of the automobile's condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3). The provisions of Ark. Ins. R. 43 are incorporated into the insurance contract as a matter of law. *See First Sec. Bank v. John Doe 1, 2, & 3*, 297 Ark. 254, 257, 760 S.W.2d 863, 865 (1988).

57.     Lopez and putative class members did what the contract required of them.

58.     Trexis breached the contracts by using the Mitchell Report instead of using the methods required by Arkansas law.

59.     As a result of Trexis' breach of contract, Lopez and putative class members suffered damages in an amount equal to the difference between

UNION COUNTY CIRCUIT CLERK  DOCUMENT# CTX-000000145812  PAGE 17 OF 26

the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

## VI. JURY DEMAND & PRAYER FOR RELIEF

60.    Lopez incorporates by reference the preceding paragraphs as if they were fully set forth herein.

61.    Article 2, § 7 of the Arkansas Constitution provides that "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy[.]" Further, Article 2, § 13 also guarantees every person a "remedy in the laws for all injuries or wrongs . . . ." Lopez demands a remedy in the laws for all injuries and wrongs alleged, and a trial by jury on all issues so triable.

62.    WHEREFORE, Lopez respectfully requests this Court:

    a.    Certify a class defined as:

> All individuals insured by Trexis under a policy issued or effective in Arkansas who: (a) had a total loss claim with Trexis; (b) that received a settlement calculated using Mitchell Report; (c) during the period from August 13, 2014 to the present.

    b.    Appoint Luis Lopez as class representative;

Page **18** of **20**

c.       Appoint Holleman & Associates, P.A. and Brad Hendricks Law Firm as class counsel;

d.       Declare that Trexis' practice of using the Mitchell Report to adjust total loss claims violates Arkansas law;

e.       Enjoin Trexis from using the Mitchell Report to adjust future total loss claims in the state of Arkansas;

f.       Award Lopez and putative class members compensatory damages in an amount equal to the difference between the actual cash value of their vehicles and the amount Trexis paid;

g.       Award them punitive damages in an amount sufficient to punish Trexis for its wrongdoing and to deter others from engaging in similar wrongdoing;

h.       Award Lopez and putative class members all recoverable costs, expenses, and attorneys' fees incurred in prosecuting this action, together with all applicable interest; and

i.       Grant Lopez all such further relief deemed just and appropriate.

Page **19** of **20**

Respectfully Submitted,

**HOLLEMAN & ASSOCIATES, P.A.**
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By: _____
John Holleman, ABN 91056
*jholleman@johnholleman.net*
Timothy A. Steadman, ABN 2009113
*tim@johnholleman.net*

&

Lloyd "Tre" Kitchens, ABN 99075
*tkitchens@bradhendricks.com*
**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Drive
Little Rock, AR 72227
Telephone (501) 221-0444

Page **20** of **20**

Steel side-door impact beams

Tire Pressure Monitoring System (TPMS)

Zone body construction w/front/rear crumple zones, hood deformation point

## Packages

[P01] PWR PKG

-inc: pwr windows w/driver side one touch auto up/down, pwr locks, remote keyless entry, door armrest pad, rear door pockets, glove compartment light

## Optional Equipment

[R01] CRUISE CONTROL                    [R10] REAR ROOF SPOILER

*DIO/PIO =   Dealer/Port Installed Options

# Loss Vehicle Base Value

Loss vehicle:  2009 Nissan Versa |  S 4 Door Hatchback | 1.8L 4 Cyl Gas A FWD

## Comparable Vehicle Information

Search Radius used for this valuation: 150 miles from loss vehicle zip/postal code.
Typical Mileage for this vehicle: 103,000 miles

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
|---|---|---|---|---|---|---|
| 1 | 2009 NISSAN VERSA S 4D HBK 4 1.8NORMAL GAS A 2WD | 170,000 | 71730 | 0 miles | $4,900.00 List Price | $5,702.04 |
| 2 | 2009 NISSAN VERSA S 4D HBK 4 1.8NORMAL GAS A 2WD | 130,169 | 71111 | 75 miles | $4,388.00 List Price | $4,621.98 |
| 3 | 2009 NISSAN VERSA S 4D HBK 4 1.8NORMAL GAS A 2WD | 106,806 | 75570 | 106 miles | $7,995.00 List Price | $8,281.93 |
| 4 | 2009 NISSAN VERSA S 4D HBK 4 1.8NORMAL GAS A.2WD | 132,000 | 71301 | 134 miles | $4,495.00 List Price | $4,838.03 |

Base Value:   $5,861.00

# Loss Vehicle Adjustments

Loss vehicle:  2009 Nissan Versa | S 4 Door Hatchback | 1.8L 4 Cyl Gas A FWD



EXHIBIT

A

## Condition Adjustments

Condition Adjustment:  $0.00          Overall Condition:  3.00-Good          Typical Vehicle Condition:  3.00

| Category | Condition | Comments |
|---|---|---|
| Interior | 3 Good | |
| Exterior | | |
| BODY | 3 Good | |
| TRIM | 3 Good | |
| VINYL/CONVERTIBLE TOP | Typical | |
| PAINT | 3 Good | |
| Mechanical | 3 Good | |
| Tire | 3 Good | |

Typical Vehicle Condition reflects a condition similar to the same year, make and model. Amount of wear and tear/ damage consistent with its age.

Comments:

no obvious damage

## Title History Adjustment

| Description | Adjustment Amount |
|---|---|
| | -$1,476.39 |

The title history deduction is an average deduction that represents a variety of title history types such as flood, hail, collision, etc. and is not specific to a particular title type. In addition, the degree of the damage that resulted in a title history is assumed to be typical.

## Comparable Vehicles

Loss vehicle: 2009 Nissan Versa | S 4 Door Hatchback | 1.8L 4 Cyl Gas A FWD

Mitchell **WorkCenter**
Total Loss

## 2009 NISSAN VERSA S 4D HBK 4 1.8 NORMAL GAS A2WD

List Price: **$4,900.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 3N1BC13E39L366969 | | 02/26/2018 | 71730 | 0 miles |

**Source**

DEALER WEB LISTING -
BUILDSHEET - VAST.COM

KENT STEGALL USED CARS

3114 NW AVENUE

EL DORADO AR 71730

870-864-8879

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$490.00 |
| Age of Ad Adjustment | | | -$35.15 |
| Mileage | 83,680 | 170,000 | $1,297.49 |
| Equipment | | | |
| [R10] REAR ROOF SPOILER | Yes | No | $78.14 |
| [L92] 5-PIECE FLOOR/TRUNK MAT SET | No | Yes | -$48.44 |
| | | Total Adjustments: | $802.04 |
| | | **Adjusted Price:** | **$5,702.04** |

Comparable Vehicle Package Details

[P01] PWR PKG

Comparable Vehicle Options Details

[R01] CRUISE CONTROL, [L92] 5-PIECE FLOOR/TRUNK MAT SET

## 2009 NISSAN VERSA S 4D HBK 4 1.8 NORMAL GAS A2WD

List Price: **$4,388.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 3N1BC13E39L404135 | L404135A | 02/05/2018 | 71111 | 75 miles |

**Source**

DEALER WEB LISTING -
BUILDSHEET - VAST.COM

ORR NISSAN OF BOSSIER

2323 VIKING DRIVE

BOSSIER CITY LA 71111

318-797-2424

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$439.00 |
| Age of Ad Adjustment | | | -$46.50 |
| Mileage | 83,680 | 130,169 | $701.29 |
| Equipment | | | |
| [P01] PWR PKG | Yes | No | $195.91 |
| [P02] PWR PKG | No | Yes | -$204.31 |
| [R10] REAR ROOF SPOILER | Yes | No | $69.97 |
| [L92] 5-PIECE FLOOR/TRUNK MAT SET | No | Yes | -$43.38 |
| | | Total Adjustments: | $233.98 |
| | | **Adjusted Price:** | **$4,621.98** |

Comparable Vehicle Package Details

[P02] PWR PKG

Comparable Vehicle Options Details

[R01] CRUISE CONTROL, [L92] 5-PIECE FLOOR/TRUNK MAT SET



Mitchell WorkCenter
Total Loss

Claim # 3286651-002 | © 2018 Mitchell International, Inc. All Rights Reserved. | Page 5

## 2009 NISSAN VERSA S 4D HBK 4 1.8 NORMAL GAS A2WD

List Price: $7,995.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 3N1BC13E79L372127 | 2127 | 02/27/2018 | 75570 | 106 miles |

Source

DEALER WEB LISTING - BUILDSHEET - CARS.COM

WESTSIDE AUTO SALES
410 HWY 82W
NEW BOSTON TX 75570
903-628-3737

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$800.00 |
| Age of Ad Adjustment | | | -$56.05 |
| Mileage | 83,680 | 106,806 | $635.62 |
| Equipment | | | |
| [P01] PWR PKG | Yes | No | $356.94 |
| [R01] CRUISE CONTROL | Yes | No | $101.98 |
| [R10] REAR ROOF SPOILER | Yes | No | $127.48 |
| [L92] 5-PIECE FLOOR/TRUNK MAT SET | No | Yes | -$79.04 |

Total Adjustments: $286.93
Adjusted Price: $8,281.93

Comparable Vehicle Option Details

[L92] 5-PIECE FLOOR/TRUNK MAT SET

---

## 2009 NISSAN VERSA S 4D HBK 4 1.8 NORMAL GAS A2WD

List Price: $4,495.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 3N1BC13EX9L449508 | 235 | 05/14/2018 | 71301 | 134 miles |

Source

DEALER WEB LISTING - BUILDSHEET - VAST.COM

SUPER ALEX AUTO SALES
40 BOLTON AVENUE
ALEXANDRIA LA 71301
318-715-5600

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$447.00 |
| Age of Ad Adjustment | | | $24.20 |
| Mileage | 83,680 | 132,000 | $747.19 |
| Equipment | | | |
| [P01] PWR PKG | Yes | No | $200.82 |
| [P02] PWR PKG | No | Yes | -$209.43 |
| [R10] REAR ROOF SPOILER | Yes | No | $71.72 |
| [L92] 5-PIECE FLOOR/TRUNK MAT SET | No | Yes | -$44.47 |

Total Adjustments: $343.03
Adjusted Price: $4,838.03

Comparable Vehicle Package Details

[P02] PWR PKG

Comparable Vehicle Option Details

[R01] CRUISE CONTROL, [L92] 5-PIECE FLOOR/TRUNK MAT SET

## Sub-Model Comparison

| Sub-Model Description | Configuration | Original MSRP |
|---|---|---|
| 2009 Nissan Versa S | 4 Door Hatchback 1.8L 4 Cyl Gas  FWD | $14,110.00 |

## Vehicle Valuation Methodology Explanation

WorkCenter Total Loss was designed and built in conjunction with J.D. Powers, experts in data analysis and vehicle pricing and a highly trusted name among consumers. With years of experience in vehicle pricing, J.D Power is a credible, third-party expert whose name provides consumer recognition and confidence. WCTL provides a consistent methodology across all vehicles and it includes valid comparable vehicles that most closely resemble the totaled vehicle and are similar to the vehicles a consumer would find in their own research.

WorkCenter Total Loss produces accurate and easy-to-understand vehicle valuations via this five step process:

**Step 1 - Locate Comparable Vehicles**

Locate vehicles that are the closest match to the loss vehicle in the same market area. WorkCenter Total Loss utilizes consumer-based vehicle sources along with inventory directly from Dealerships. When available WCTL also provides sold vehicle records from sources such as J.D. Powers.

**Step 2 - Adjust Comparable Vehicles**

Make adjustments to the prices of the comparable vehicles. The comparable vehicles are identical to the loss vehicle except where adjustments are itemized. There are several types of comparable vehicle adjustments

- Projected Sold Adjustment - an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).

- Age of Ad Adjustment- an adjustment to the price of the comparable vehicle based on the relationship between the date of the advertisement and the date of the loss vehicle.

- Mileage Adjustment - an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.

- Equipment- adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle.

**Step 3 - Calculate Base Vehicle Value**

The base vehicle value is calculated by averaging the adjusted prices of the comparable vehicles.

**Step 4 - Calculate Loss Vehicle Adjustments**

There are four types of loss vehicle adjustments:

- Condition Adjustment:

  Adjustments to account for the condition of the loss vehicle prior to the loss.

- Prior Damage Adjustment:

  Adjustments to account for any prior damage present on the loss vehicle prior to the loss.

- After Market Part Adjustment:

  Adjustments to account for any after market parts present on the loss vehicle prior to the loss.

- Refurbishment Adjustment:

  Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.

**Step 5 - Calculate the Market Value**

The Market Value is calculated by applying the loss vehicle adjustments to the base value.

Mitchell WorkCenter
Total Loss

"Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison."

Mitchell WorkCenter™
Total Loss